IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA GAERTNER, individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>COMMEMORATIVE BRANDS, INC., a Delaware corporation doing business as Balfour & Co., COMMEMORATIVE BRANDS ILLINOIS LLC, an Illinois limited liability company, ICONIC GROUP, INC., a Delaware corporation,<br><br>**Defendants.** | Case No. 23-CV-02452-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This case comes before the Court on the Defendants Commemorative Brands, Inc., Commemorative Brands Illinois LLC, and Iconic Group, Inc.'s ("Defendants") Motion to Compel Arbitration and Dismiss or in the Alternative, Stay Claims (Doc. 24) pursuant to Rules 12(b)(3) of the Federal Rules of Civil Procedure and Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. Plaintiff Joshua Gaertner brings this putative class action against Defendants alleging violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). For the reasons stated below, the Motion is denied.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an adult and Illinois resident who used the GradImages website in

the state of Illinois. (Doc. 1, Doc. 29-1). Plaintiff alleged that GradImages violated BIPA because: (1) GradImages failed to obtain informed written consent and a written release before obtaining biometric information; and (2) GradImages sold, leased, traded, or otherwise profited from a person's or customer's biometric information. (Doc. 1).

GradImages, a company owned by Defendants, specializes in photographing graduation ceremonies and other events held by high schools, colleges, and universities. (Doc. 1). GradImages stated that it "photograph[s] nearly 2 million graduates at 6,000 commencement ceremonies and related events each year" and has "hundreds of professional photographers" working on its behalf. (*Id.*).

GradImages facilitates sales of its photographs by using the biometrics of the people depicted. (Doc. 1). First, GradImages obtains what it calls a "primary identification"—a person's face, associated with their name—from the photo taken when the graduate walks across the stage to receive their diploma. (*Id.*). Second, GradImages scans the facial image with facial recognition software to extract data from the unique geometry of the graduate's face (sometimes called a "faceprint"). (*Id.*). Third, GradImages uses the faceprint to find matching facial images in candid photos taken during the graduation so that it can solicit graduates to buy photos that might contain their face. (*Id.*).

Gaertner graduated from Southern Illinois University Edwardsville in 2023. (Doc. 1). He attended the school's graduation ceremony held on May 6, 2023, in Edwardsville, Illinois. (*Id.*). During the event, photographers working on behalf of GradImages took photographs containing Gaertner's facial image. (*Id.*). Gaertner was

never informed that GradImages would collect or use his biometrics. (*Id.*). GradImages then solicited Gaertner via email to purchase the photographs and made the photographs available online to anyone who searched for Gaertner's name, school, and graduation year. (*Id.*). Gaertner's mother purchased one or more of those photographs through the GradImages website. (*Id.*). Gaertner also accessed the GradImages website to view photographs and submit a form indicating that some of photographs did not depict him. (Doc. 29-1). Gaertner was never expressly asked to consent to the terms of use associated with use of GradImages' website or to agree to arbitrate. (Doc. 29-1). Instead, the website contained a browsewrap agreement on its pages that did not require users to check a box to assent to the terms of use of the site. (Doc. 25). The terms of use hyperlink for the GradImages website was at the bottom of the page, well below the substantive content of the pages. (Doc. 25). There was nothing visually distinctive about the hyperlink, either in general, or relative to the other surrounding hyperlinks. (Doc. 25-1, pp. 36, 39). When the hyperlink is clicked on, the terms of use included the following statement:

> Iconic Group, Inc. and/or its affiliates, doing business as Iconic Group, MarathonFoto, GradImages, or University Photo referred to herein as "Iconic Group," offer website features and other products and services to visitors of this website. The following terms and conditions govern your access to and use of this website, including any content, functionality, and services offered on or through this website. BY USING THIS WEBSITE, YOU ACCEPT AND AGREE TO BE BOUND BY THESE TERMS OF USE. If you do not want to agree to these Terms of Use you must not access or use this website.

(Doc. 25).

## APPLICABLE LAW AND LEGAL STANDARDS

Courts deciding motions to compel arbitration apply a summary judgment

standard under Federal Rule of Civil Procedure 56. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Movants are required to provide sufficient evidence in support of their claims. *Id.* "The party opposing arbitration must identify a triable issue of fact concerning the existence of agreement" and "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Id.* The Court may consider exhibits and affidavits concerning the arbitration agreement. *See Friends for Health: Supporting North Shore Health Center v. PayPal, Inc.*, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018).

## ANALYSIS

As a result of the terms of use, GradImages moved for this Court to enforce the arbitration agreement on Gaertner and dismiss Plaintiffs' claims pending individual arbitration of the claims or in the alternative, stay the claims pending arbitration. GradImages also suggested that discovery might be appropriate to resolve issue. Gaertner contended that the arbitration clause in the terms of use does not apply, and, even if it did, it was not conspicuous and should not be enforced.

The Federal Arbitration Act ("FAA") requires enforcement of valid, written arbitration agreements. *See Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2). The FAA established "a liberal federal policy favoring arbitration agreements," *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019), and placed arbitration agreements on level ground with other contracts. *See Gore v. Alltel Comm'cns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotations omitted). As a result, to compel arbitration, a court must determine whether the parties agreed to arbitrate the dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Formation of a contract, and likewise an agreement to arbitrate, is governed by state law. *See Tinder*, 305 F.3d at 733 (7th Cir. 2002).

At the outset, the alleged violations of BIPA are independent of the terms of use on the GradImages website. Defendants' quoted part of the terms of use states that "the following terms and conditions govern your access to and use of this website, including any content, functionality, and services offered on or through this website." (Doc. 25). The alleged violations occurred before Gaertner ever accessed the website and, furthermore, the alleged processes that led to the violation are not covered as content, functionality, or services on the website and have nothing to do with access to and use of the website. Had Gaertner never accessed the website, the alleged violation would have still occurred.

Moreover, even if that was not the case, Gaertner did not agree to the terms of use when he accessed the GradImages website.

"Formation of a contract requires mutual assent in virtually all jurisdictions." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Mutual assent is shown through "outward expressions such as words and acts." *Id.* (quoting *Bank Computer Network Corp. v. Cont'l Ill. Nat. Bank & Trust Co.*, 442 N.E.2d 586, 591 (Ill. App. Ct. 1982)).

The parties agree that the agreement in question is a browsewrap agreement. Agreements of this nature "do not require users to 'sign a document or click an 'accept' or 'I agree' button'" to use the website and navigate the website's pages. *Sgouros v. TransUnion Corp.*, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015), aff'd, 817 F.3d 1029 (7th Cir. 2016). "Courts enforce browsewrap agreements only when there is actual or

constructive knowledge of terms" to show assent. *Id.*

Here, the Court notes that Defendants did not put forth any evidence of Gaetner's actual knowledge of the terms of use. This is an example of where GradImages leaned on the Court to open discovery for the purposes of determining arbitrability. However, in his affidavit, Gaertner stated that he "did not see any clickable hyperlinks captioned 'Terms Of Use' or click on any hyperlinks captioned 'Terms Of Use,'" nor did he see any discussion of terms applicable to website usage (Doc. 29-1, p. 3). Without actual knowledge, the validity of a browsewrap agreement hinges on reasonable notice, and therefore constructive knowledge, of the terms of the contract. In this Circuit, Courts have considered several factors in determining constructive knowledge, including "(1) whether there is a clear prompt directing the [user] to read the terms; (2) the size of the prompt; (3) use of a bold font or contrasting colors; (4) the visual clarity of the website's layout; and (5) whether the user can see the link to the terms without having to scroll . . . ." *Campos v. Tubi, Inc.*, 2024 WL 496234, at *4 (N.D. Ill. Feb. 8, 2024) (quoting *Domer v. Menard, Inc.*, 2023 WL 4762593 at *3 (W.D. Wis. July 26, 2023)).

A review of the GradImages webpages and hyperlinks connecting them shows that the notice of the terms of use is far less conspicuous than GradImages contends. The lack of clutter on the GradImages website pages favors the Defendants, but any factor favoring Defendants ends there. The terms of use hyperlink is at the bottom of the website and well below the substantive content of the pages, is no larger than the other hyperlinks located there, is in the same color as the other hyperlinks located there, and there is no clear prompt directing the website user towards the hyperlink.

Possibly because Defendants anticipated that analysis, Defendants then argued that Gaertner's mother acted as representative of Gaertner when she purchased pictures from GradImages and assented to the terms of use. However, Gaertner is an adult, so this argument does not hold water. Nor does the argument that Gaertner's counsel assented for him when they accessed the GradImages website.

In short, hyperlinking the terms of use at the bottom of every page on a website is not a sufficient way to provide constructive notice to create a contract. *See Alan Ross Mach. Corp. v. Machinio Corp.*, 2018 WL 3344364, at *5 (N.D. Ill. July 9, 2018) (collecting cases). Accordingly, the Court finds that because the GradImages website failed to provide reasonable notice of the terms of use for the purposes of assent, there was not a valid agreement to arbitrate.

## CONCLUSION

For the foregoing reasons, Defendants Commemorative Brands, Inc., Commemorative Brands Illinois LLC, and Iconic Group, Inc.'s Motion to Compel Arbitration and Dismiss or in the Alternative, Stay Claims (Doc. 24) is **DENIED**.

**IT IS SO ORDERED.**

DATED: May 24, 2024

s/ *Stephen P. McGlynn*  
STEPHEN P. McGLYNN  
U.S. District Judge