## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA GAERTNER and CARSON KOY, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>COMMEMORATIVE BRANDS, INC., *et al.*,<br><br>                   Defendants. | <br><br><br><br>Case No. 23-cv-02452-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court for consideration of Defendants Commemorative Brands, Inc. d/b/a Balfour & Co.'s; Commemorative Brands Illinois LLC's; and Iconic Group, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 47). Having been fully informed of the issues presented, this Court **DENIES** the Defendants' Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joshua Gaertner filed his Class Action Complaint on July 14, 2023, on behalf of himself and all others similarly situated against Defendants Commemorative Brands, Inc. d/b/a Balfour & Co. (hereinafter "Balfour & Co."); Commemorative Brands Illinois LLC ("Commemorative Brands Illinois"); and Iconic Group, Inc. ("Iconic Group") (collectively, "Defendants" or "GradImages"). (Doc. 1). On November 11, 2024, Gaertner sought Leave to File his First Amended Class Action Complaint (Doc. 44), which this Court granted on November 12, 2024. (Doc. 45). Two

additional Plaintiffs joined Gaertner in the litigation, and Gaertner, now with Wesley Janicki and Carson Koy (collectively, "Plaintiffs"), filed their First Amended Complaint on November 12, 2024. (Doc. 46). Plaintiff Janicki subsequently voluntarily dismissed all of his claims brought against Defendants on January 13, 2025. (Docs. 53, 54).

Gaertner and Koy brought four claims against Defendants for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILL. COMP. STAT. 14/1 *et. seq.* ("BIPA"). The following facts are taken from Plaintiffs' First Amended Complaint, which this Court accepts as true for purposes of evaluating a motion to dismiss. (*See* Doc. 46); *see Lax v. Mayorka*s, 20 F.4th 1178, 1181 (7th Cir. 2021). GradImages is in the business of professionally photographing graduation ceremonies across the United States and offering them for sale to graduates and other individuals who search for a graduate's name, school, and graduation year on their website. (*Id.*, p. 2). GradImages captures an image of a graduate when they walk across the stage and offers these images for sale to graduates and other individuals who search GradImages' website for a graduate's name, school, and graduation year. (*Id.*, p. 7). GradImages may also take other photographs of an individual graduate through its efforts to capture candid "public relations" or "PR" images, or "in the moment" images taken before or after the ceremony, and also offer them for sale on its website. (*Id.*, p. 6). Because such images are taken in the moment, GradImages is not always able to identify a graduate and associate their name with the captured facial image contemporaneously. (*Id.*). Previously, GradImages would upload these PR photographs into a large online gallery through which graduates and others had

to potentially browse through all the images from a particular event to find any of themselves. (*Id.*). To solve this problem, GradImages began to use facial recognition software to identify individuals in PR photos and subsequently market photographs to those individuals directly. (*Id.*, p. 7).

According to Plaintiffs, the facial recognition software operates as follows: GradImages first is able to associate a name with a facial image as it captures a facial image of a graduate who walks across the graduation stage. (*Id.*). GradImages then scans the image of the graduate on stage through its computer software to extract data representing the unique geography of a facial image, or a "faceprint," which remains associated with the graduate's name. (*Id.*). Next, GradImages scans its PR photographs through its computer software to capture faceprints of individuals in those photographs. (*Id.*). Thus, GradImages is able to associate the name-associated faceprints (obtained from the images of a graduate walking across stage at the ceremony) with similar faceprints of individuals appearing in the PR photographs to thereby locate other images of a graduate. (*Id.*). In other words, GradImages uses facial recognition software to match the face of a graduate on stage to other images of a graduate taken before or after the ceremony in order to identify all images of a graduate captured that day and then offer them for sale to that graduate.

Plaintiffs allege that they were photographed, and their images processed though the above-described fashion, at their respective graduation ceremonies: Gaertner at his graduation from Southern Illinois University Edwardsville ("SIUE") in May 2023 and Koy at her graduation from Loyola University Chicago in May 2022. (*Id.*). Gaertner and Koy, on behalf of themselves and others similarly situated, allege

that GradImages' practice of using facial recognition software to obtain "faceprints" of them from their graduation ceremonies and using that face print to identify other images of them and subsequently market those images to them violates BIPA. (*Id.*).

Defendants Balfour & Co., Commemorative Brands Illinois, and Iconic Group filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint on November 21, 2024, arguing that Plaintiffs lack jurisdiction to bring their claims and that they fail to state a claim for which this Court can grant relief. (Doc. 47). Plaintiffs filed their Memorandum in Opposition to Defendants' Motion to Dismiss on December 23, 2024. (Doc. 51). On January 6, 2025, Defendants filed their Reply in Support of Motion to Dismiss. (Doc. 52).

### APPLICABLE LAW AND LEGAL STANDARDS

The Motion to Dismiss and supporting Memorandum of Law filed by Balfour & Co., Commemorative Brands Illinois, and Iconic Group were brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 46, 47).

## I. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The federal judiciary is empowered only to decide "Cases" and "Controversies" under Article III of the U.S. Constitution, a limitation that "confines federal courts to hearing only those disputes that are sufficiently concrete and presented in a form historically recognized as appropriate for judicial resolution." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (citing U.S. CONST. art. III,

§ 2; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). To invoke the court's adjudicative power, a plaintiff must plead standing to sue, "a requirement 'rooted in the traditional understanding of a case or controversy.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), "a court should use *Twombly-Iqbal*'s plausibility requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (internal quotations omitted); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (stating that, when deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To have standing to sue within the meaning of Article III, a plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Fox*, 980 F.3d at 1151 (citing *Spokeo*, 578 U.S. at 338). More specifically, the test for injury in fact "asks whether the plaintiff 'suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Id.* Article III standing still requires a concrete injury even in the

context of a statutory violation. *Id.* Whereas concrete injuries, or those such as monetary losses and physical harms to person or property, are easily recognizable, intangible injuries, including those from statutory violations, are conceptually more difficult to analyze in the context of determining whether a plaintiff has standing in federal court. *Id.* (citing *Spokeo*, 578 U.S. at 340–341). "Congress or a state legislature may identify and elevate historically non-cognizable intangible harms to the status of cognizable injuries, but it does not follow that the injury-in-fact requirement is satisfied whenever a statute confers a right or imposes a duty and creates a cause of action for a violation." *Id.* As the *Fox* court explained:

> Because standing is a constitutional requirement, a legislature cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would otherwise not have standing. By way of example, *Spokeo* explained that if a plaintiff pleads a statutory claim but alleges only a bare procedural violation, divorced from any concrete harm, he will not have satisfied the injury-in-fact requirement.

*Id.* at 1151–52) (internal quotations and citations omitted).

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court of Appeals for the Seventh Circuit has explained that "'plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v.*

*Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)) (cleaned up). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are directed by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745, n.1 (7th Cir. 2012).

ANALYSIS

## I. Illinois Biometric Information Privacy Act

Before analyzing Defendants' arguments made in their Motion to Dismiss, this Court will first conduct a brief overview of the provisions of BIPA that are relevant to this Court's analysis. BIPA was enacted to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILL. COMP. STAT. 14/5(g); *see also Tims v. Black Horse Carriers, Inc.*, 216 N.E.3d 845, 850 (Ill. 2023). The Act defines biometric identifiers to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740

ILL. COMP. STAT. § 14/10. It applies to "private entities," meaning "any individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* This definition of "private entity" states that it does not include a State or local government agency or any court of Illinois, a clerk of the court, or a judge or justice thereof. *Id.*

BIPA seeks to regulate how private entities may use or handle biometric identifiers of Illinois residents. Section 15(b) of the Act "prohibits private entities from collecting, capturing, or otherwise obtaining a person's biometric identifiers or information without the person's informed written consent." *Fox*, 980 F.3d at 1150 (citing 740 ILL. COMP. STAT. 14/15(b)). More specifically, Section 15(b) requires private entities, if collecting, capturing, or otherwise obtaining a person's biometric information, to: inform the subject in writing that the biometric information is being collected or stored (Section 15(b)(1)); inform the subject in writing of the specific purpose and length of term for which the biometric information is being collected, stored, and used (Section 15(b)(2)); and obtain a written release from the subject of the biometric identifier (Section 15(b)(3)). 740 ILL. COMP. STAT. 14/15(b). Section 15(c) prohibits private entities from selling, leasing, trading, or otherwise profiting from a person's or a consumer's biometric identifiers or information. *Id.* § 14/15(c); *see Mayhew v. Candid Color Sys., Inc.*, 743 F. Supp. 3d 994 (S.D. Ill. 2024). Aggrieved parties may sue private entities for violations of the Act and potentially recover money damages, reasonable attorneys' fees and costs, and injunctive relief where appropriate. 740 ILL. COMP. STAT. 14/20.

Section 14/25 limits the reach of the Act. Section 25(c) states that "[n]othing in this act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." *Id.* § 14/25(c); *see* Gramm–Leach–Bliley Act (GLBA), Pub. L. No. 106-102, § 504(a), 113 Stat. 1338, 1439 (1999). Section 25(e) states that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILL. COMP. STAT. 14/25(e).

## II.    Rule 12(b)(1) Analysis: Plaintiffs' Standing to Bring BIPA Claims

We now turn to this Court's subject matter jurisdiction to hear Plaintiffs' claims. Plaintiffs invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332, having pleaded that the named Plaintiffs, Gaertner and Koy, are completely diverse from Defendants Balfour & Co., Commemorative Brands Illinois, and Iconic Group, and that the amount-in-controversy requirement has been satisfied. (*See* Doc. 46). Defendants have not objected or otherwise opposed this Court's diversity jurisdiction.

This Court begins by addressing the question of whether Plaintiffs have sufficiently pleaded an injury-in-fact with regard to each Count of Plaintiffs' First Amended Complaint, (*see* Doc. 46, pp. 20–21), a question this Court raises *sua sponte*. "A *sua sponte* inquiry into subject-matter jurisdiction is prudent in the BIPA context because 'standing requirements in Illinois courts are more lenient than those imposed by Article III.'" *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1166 (C.D. Ill. 2022) (quoting *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 622 (7th Cir. 2020)).

### a.  Sections 15(b)(1), (2), and (3)

This Court will first examine whether Plaintiffs have standing and have sufficiently pleaded injuries-in-fact with regard to their first three claims against Defendants for violations of Section 15(b) of BIPA. In Count I, Gaertner and Koy allege that GradImages collected and used their biometrics without first informing them in writing that their biometrics were being collected in violation of Section 15(b)(1). (Doc. 46, pp. 17–18). In Count II, Gaertner and Koy allege that GradImages collected and used their biometrics without first informing them in writing of the specific reason or length of term for which their biometrics were being collected or used in violation of Section 15(b)(2). (Doc. 46, pp. 18–19). In Count III, Gaertner and Koy allege that GradImages collected and used their biometrics without first having obtained a written release executed by them in violation of Section 15(b)(3). (Doc. 46, pp. 19–20).

"Since [Section] 15(b) confers a right to receive certain information from a private entity that collects, stores, or uses a person's biometric identifiers, the violation of that right, by itself, provides an actionable grievance." *Mayhew*, 743 F. Supp. 3d. at 1008 (citing *Bryant*, 958 F.3d at 621); *Rosenbach v. Six Flags Ent. Corp.*, 219 N.E.3d 1197; *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 802 (N.D. Ill. 2022). Here, Plaintiffs have plausibly alleged that GradImages violated Section 15(b) by stating that they did not receive the information required by BIPA for GradImages to have lawfully collected and used their biometrics and that they did not have the opportunity to sign a written release giving GradImages permission to collect and use their biometrics. (Doc. 46). It is clear that Plaintiffs have sufficiently alleged injuries-

in-fact with their claims related to Section 15(b) of BIPA, that the injuries are traceable to the conduct of GradImages, and that this Court has the power to redress those injuries. *See Fox*, 980 F.3d at 1151 (citing *Spokeo*, 578 U.S. at 338).

### b. Section 15 (c)

In Count IV, Gaertner and Koy allege a violation of BIPA's Section 15(c), claiming that GradImages unlawfully profited from the biometrics of Gaertner, Koy, and the purported class members. (Doc. 46, p. 20–21). Courts have held that plaintiffs lack standing to bring Section 15(c) claims where they allege mere general regulatory violations of the statute that lack specificity to plaintiffs' resultant injury-in-fact. *See Duerr*, 590 F. Supp. 3d. at 1167 (C.D. Ill. 2022) (holding plaintiffs lacked standing to bring BIPA Section 15(c) claim "[w]ithout allegations that Plaintiffs suffered any injury beyond a general regulatory violation of Section 15(c)"); *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *6–7 (N.D. Ill. Feb. 26, 2024) ("Because the first amended complaint does not allege that [defendant] profited directly from the collection of biometric data or explain how the plaintiffs were individually harmed by this activity, the Court grants [defendant]'s motion to dismiss as to this [Section 15(c)] claim."); *see generally Fox*, 980 F.3d at 1151–52 ("By way of example, *Spokeo* explained that if a plaintiff pleads a statutory claim but alleges only a bare procedural violation, divorced from any concrete harm, he will not have satisfied the injury-in-fact requirement.)".

In *Duerr*, in which Plaintiffs challenged a public Illinois university's use of online test-proctoring services in violation of BIPA, the court found that "[a]llegations as to Defendant's commercial advantage from the collection of Plaintiffs' biometric

information are more specific regarding the nature of Defendant's alleged unlawful profit, [. . .] but those allegations do not speak to the nature of Plaintiffs' resultant injury." 590 F. Supp. 3d at 1167 (C.D. Ill. 2022). In another BIPA case from within the Seventh Circuit, *Harvey v. Resurrection University*, No. 21-CV-3203, 2022 WL 3716213, at *2–3 (N.D. Ill. Aug. 29, 2022), the Court found that plaintiff lacked standing to bring Section 15(c) claims against her Illinois university for use of an online test-proctoring software in violation of BIPA. Plaintiff alleged that her university offered online coursework and received tuition dollars from students and saved money by not needing to pay live proctors to monitor students during exams, violating Section 15(c)'s requirement that private entities not profit from use of biometrics. *Id.* at *3. The court found that her allegations did not go beyond general regulatory violations and lacked allegations about how she was personally affected by defendant's alleged profiting. *Id.*

In a BIPA case from this District, *Mayhew v. Candid Color Systems, Inc.*, plaintiffs brought similar claims to Gaertner and Koy regarding a graduation photography company's violation of Section 15(c) BIPA by scanning images of graduates' faces to identify students to later solicit the purchase of their images. 743 F. Supp. 3d 994. District Judge Dugan held that, under the plausibility standard, it was, "[a]t a minimum, plausible that when [defendant] solicited the purchase of photographs through emails, containing links to compiled photographs of Plaintiffs and others on a Grad Photo Network website that was still using the facial recognition technology, it was 'otherwise profit[ing]' from the commercial use of Plaintiffs' biometric identifiers to sell photographs." *Id.* at 1014; *see also Moomaw et*

*al. v. GeoSnapShot PTY LTD*, No. 3:23-CV-1321-DWD, 2025 WL 870319 (S.D. Ill. Mar. 20, 2025) (evaluating Section 15(c) of BIPA at the motion to dismiss stage and finding that, where defendants were in the business of profiting from the sale of photographs, which included collection and storage of biometrics as a necessary component of their business model, even when defendant was not directly selling biometric data to a third party, the plaintiffs still plausibly stated a claim under Section 15(c)).

Here, both Gaertner and Koy allege they were harmed by GradImages' profiting from use of their biometrics because GradImages "solicited" them to purchase the images compiled by use of their biometric faceprints in violation of BIPA. (Doc. 46, pp. 8, 10, 21). While Gaertner actually alleges his mother purchased photos of Gaertner from GradImages, (*see id.*, p. 8), Koy does not allege that GradImages specifically profited from the sale of *her* photos, or that anyone ever purchased *her* photos. (*See id.*, p. 10) (emphasis added).

This Court finds that the factual circumstances of *Mayhew* as well as the Court's reasoning in that case compel the conclusion that Gaertner and Koy have standing to bring their Section 15(c) claims against GradImages. This Court finds that it is plausible that, when GradImages used Gaertner's and Koy's biometric facial scans to compile a collection of photographs of them on their graduation day and solicited them via email to purchase that collection of images, GradImages profited from the sale of those photos. (*See id.*, pp. 8, 10, 21). Gaertner alleges that his mother did, in fact, purchase said photographs from GradImages. (*Id.*, p. 8). Thus, this Court

is satisfied that an injury-in-fact exists with regard to Plaintiffs' claims of violations of Section 15(c) of BIPA.

### c. Standing to Sue GradImages

This Court next turns to the arguments raised by GradImages in their Motion to Dismiss. GradImages argues that Plaintiffs lack Article III standing to bring their claims because GradImages is a "state agency contractor" and an affiliate of financial institutions, both of which are types of private entities which would otherwise be subject to BIPA, but are expressly excluded by the Act in Sections 25(c) and 25(e), respectively. (*See* Doc. 47, pp. 2, 10–14). Defendants argue that because BIPA does not apply to them, Plaintiffs (1) may not use BIPA as a procedural vehicle to bring their claims in federal court because they lack a right of action, and (2) have not suffered an injury by any of GradImages' actions, who are not subject to BIPA. (*See id.*).

The Supreme Court has stated that, for purposes of Article III standing, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of [a statute], and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of [a statute]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). Here, unlike GradImages asserts, we are concerned with the latter, not the former.

Congress determines the jurisdiction of the federal courts and therefore determines the power of the courts to adjudicate disputes. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778–79 (7th Cir. 2002) (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167 (1939)). It is settled law that "[o]nce Congress has conferred subject

matter jurisdiction on the federal courts, state law cannot expand or contract that authority." *Id.* (citing *Truck Components v. Beatrice Co.*, 143 F.3d 1057, 1061 (7th Cir. 1998); *Beach v. Owens–Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir. 1984) ("State law cannot be construed to enlarge or contract federal jurisdiction.")).

Here, Congress, by having enacted the federal diversity statute, 28 U.S.C. § 1332, has conferred jurisdiction on this Court to hear Plaintiffs' claims and adjudicate them. *See id.* Further, as explained above, this Court has also determined it has the power under Article III to hear this case because Plaintiffs have sufficiently pleaded injuries-in-fact with regard to Defendants' conduct. Whether BIPA Section 25(c) or 25(e) applies to Defendants in this litigation or relieves them of any liability as to any of Plaintiffs' claims does not affect Congress's grant of jurisdictional authority for this Court to hear this case.

The question of "[w]hether there remains a viable cause of action is a separate question" from the question of standing. *Id.* (citing *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949)). When a federal court exercises diversity jurisdiction, it merely serves as a neutral forum in which to present state law claims." *Id.* "[I]f state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted." *Preston v. Chancellor's Learning Sys., Inc.*, No. 108CV1017LJM-TAB, 2009 WL 1583464, at *3–4 (S.D. Ind. June 4, 2009) (citing *Goetzke*, 280 F.3d at 778–79 (7th Cir. 2002)) (cleaned up). Thus, while certain provisions of BIPA may not impact this Court's jurisdiction, it may be relevant in this Court's analysis under Rule

12(b)(6) in determining whether Plaintiffs have failed to state a claim, which we turn to next.

### III.    Rule 12(b)(6) Analysis: Failure to State a Claim

The main thrust of GradImages' argument that Plaintiffs have failed to state a claim is that, based on their purported relationship with SIUE and Loyola University Chicago, GradImages is an "affiliate of a financial institution" within the meaning of Section 25(c) and a "contractor, subcontractor, or agent of a state agency" within the meaning of 25(e), meaning that BIPA does not apply to them. (Doc. 47, pp. 17–19). Defendants first argue that Plaintiffs have failed to state a claim because Plaintiffs have conclusively (and improperly) pleaded that GradImages is a "private entity" within the meaning of BIPA. (Doc. 47). Defendants argue that this, standing alone, is not enough for Plaintiffs to state their claim, and that Plaintiffs' failure to have pleaded that GradImages is not an affiliate of a financial institution and a state agency contractor is fatal to their claims. (Doc. 47). In response, Plaintiffs argue that GradImages' arguments regarding their status as a state agency contractor and an affiliate of a financial institution (which they also contest) are affirmative defenses that, here, GradImages have not sufficiently pleaded nor proved. (Doc. 51, p. 7).

Questions of statutory interpretation are questions of law. *Duerr*, 590 F. Supp. 3d at 1168 (citing *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 458 (7th Cir. 2006)). Because BIPA is Illinois law, this Court must apply the statutory interpretation rules of Illinois. *Id.* at 1168–69 (citing *Pastors Protecting Youth v. Madigan*, 237 F. Supp. 3d 746, 749 (N.D. Ill. 2017) ("As a federal court interpreting Illinois law, the Court defers to Illinois' rules of statutory interpretation.")). "When

construing a statute, an Illinois court's primary objective is to ascertain and give effect to the legislature's intent." *Id.* at 1169 (citing *Rosenbach*, 129 N.E. at 1204) (cleaned up). "The plain language of the legislature is the best indication of the legislature's intent." *Id.* (citing *Maksym v. Bd. of Election Comm'rs of City of Chi.*, 950 N.E.2d 1051, 1060 (Ill. 2011)).

### a. Section 25(c) and 25(e) status is not appropriate at Motion to Dismiss stage.

Section 10 of BIPA defines a "private entity" as follows: "any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof." A separate section of BIPA, Section 25, provides the rules of construction for the statute, including language instructing that nothing in the act shall be deemed to apply to financial institutions or affiliates of financial institutions as defined by the GBLA (Section 25(c)) and to contractors, subcontractors, or agents of a state agency or local government (Section 25(e)). The Illinois legislature could have chosen to write into the definition of "private entity" that financial institutions, affiliates of financial institutions, and contractors, subcontractors, and agents of state or local governments were not included in the term "private entity," but it did not.

In *Deyerler v. HireVue, Inc.*, the district court, at the Rule 12(b)(6) motion to dismiss phase, declined to consider a private company's argument that because it contracts with an insurance company, it is subject to the Section 25(c) affiliate of a financial institution exception, noting that the argument was akin to an affirmative

defense. 2024 WL 774833, at *5. The Court stated that "[c]ourts in this district have commented that the financial institution exemption is akin to an affirmative defense, which cannot be considered in the context of a Rule 12(b)(6) motion unless the defendant's entitlement to the defense is apparent from the face of the complaint." *Id.* (citing *Davis v. Jumio Corp.*, No. 22 C 776, 2023 WL 2019048, at *2 (N.D. Ill. Feb. 14, 2023); *Patterson*, 593 F. Supp. 3d at 819 n.18 (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005))). Because the complaint contained no allegations upon which the court could infer that the defendant was a financial institution subject to the GBLA, it was premature to resolve this argument at the motion to dismiss phase. *Id.*; *accord Patterson* 593 F. Supp. 3d at 819 n.18 (stating that defendant's brief [in support of its motion to dismiss] "relies heavily on non-record facts, suggesting that section 25(c) provides an affirmative defense not fit for resolution at this stage").

*Mayhew v. Candid Color Sys., Inc.*, discussed *supra*, is again informative in this context. In that case, the district court further explored this argument that Sections 25(c) and 25(e) are likened to affirmative defenses. 743 F. Supp. 3d 994. As discussed briefly above, *Mayhew* featured plaintiffs filing a purported class action lawsuit against a photography company that allegedly took photographs of the plaintiffs at their respective graduations from colleges and universities in Illinois; processed them using biometric identifiers in violation of BIPA; and profited by soliciting graduates to purchase their images via email. *Id.* at 998. The defendant moved to dismiss, arguing that because it photographed graduation ceremonies pursuant to agreements executed with a public high school and an Illinois college,

Section 25(e) of BIPA, which provides that BIPA does not apply to state agency contractors, bars plaintiffs' claims against the photography company. *Id.* at 1009–10.

The court began its analysis by synthesizing the interplay between the relevant Federal Rules of Civil Procedure, including Rules 7, 8, and 12.[1] *Id.* at 1010. The court began at Federal Rule of Civil Procedure 8, stating that this Rule carefully distinguishes between defenses that are denials in subpart (b) and affirmative defenses in subpart (c)(1). *Id.* at 1010 (citing *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022)). The court synthesized how Rule 8 works with Rules 7 and 12: "Importantly, Rule 8(c)(1) 'provides a nonexclusive list of such defenses' that require the defendant to 'come back with a responsive pleading' – i.e. to answer the complaint under [Rule] 7(a)(2) – 'unless it is raising one of the seven defenses listed in rule 12(b) as appropriate for motion.'" *Id.* (citing *Luna Vanegas*, 46 F.4th at 640). The court also noted that the Seventh Circuit recognizes that affirmative defenses are not on the Rule 12(b) list of defenses appropriate for motion. *Id.* (citing *Luna Vanegas*, 46 F.4th at 640; *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). The court concluded that, based on this structure, "'[i]t follows that an affirmative defense *must* be raised in the answer, not by motion.'" *Id.* (quoting *Luna Vanegas*, 46 F.4th at 640) (citing *Vasquez v. Ind. Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022));

---

[1] Federal Rule of Civil Procedure 8(b) provides that: (1) In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim against it; and (B) admit or deny the allegations asserted against it by an opposing party. Rule 7(a) provides the exclusive list of pleadings allowed, which includes an answer to a complaint. Rule 12(b) provides that: Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. It further specifies the seven types of defenses that may be asserted via motion: lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, failure to state a claim upon which relief can be granted, and failure to join a party under Rule 19.

*accord King v. King*, No. 23-cv-355, 2023 WL 3346974, at *6 (S.D. Ill. May 10, 2023);

*Johnston v. Kashi Sales, L.L.C.*, 626 F. Supp. 3d 997, 1006 (S.D. Ill. 2022) (cleaned

up). Thus, the *Mayhew* court held that "it would be imprudent to apply the

government contractor exception to BIPA, contained in 25(e), at this stage in the

case." *Id.* at 1011 (citing *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶¶

18-19, 2022 WL 4484047). Further, the court held that it was not necessary for

plaintiffs to have anticipated or refuted this affirmative defense and thus have

pleaded around it. *Id.* at 1010.

  While noting that the Seventh Circuit has not addressed this issue directly,

this Court finds the weight of authority from other districts to be compelling and

concludes that GradImages' arguments that it falls within the Section 25(c) and 25(e)

exceptions to BIPA is not appropriate at the Rule 12(b)(6) motion to dismiss stage.

Further, the Court finds that Gaertner and Koy were not required to plead around

these arguments, and their allegations that Balfour & Co., Commemorative Brands

Illinois, and Iconic Group are private entities within the meaning of BIPA are

sufficient to state a claim. *See id.* (explaining that a plaintiff, when drafting a

complaint, is not required to anticipate or refute affirmative defenses); *accord*

*Patterson* 593 F. Supp. 3d at 819 n.18 ("A complaint is not required to 'anticipate

affirmative defenses to survive a motion to dismiss.'") (citing *United Lewis*, 411 F.3d

at 842). As such, this Court declines to determine the merits of GradImages

arguments that it falls within the 25(c) and 25(e) exceptions at this time.

  **b. Defendants' affirmative defense is not conclusively
established.**

GradImages next argues that, even if the Court interprets its arguments under Sections 25(c) and 25(e) as affirmative defenses, this Court should still dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) because the defense is conclusively established by the complaint, concessions made by the Plaintiff, and other materials appropriate for judicial notice. (Doc. 47, p. 19, citing *Baylay v. Etihad Airways*, 881 F.3d 1032, 1040 (7th Cir. 2018), *Local 25 S.E.I.U. Welfare Fund v. Great Lakes Maint. & Sec. Corp.*, 55 F. App'x 373, 375 (7th Cir. 2002)). In support of their Motion to Dismiss, Defendants cite to various portions of the public websites of SIUE (from which Plaintiff Gaertner graduated (*see* Doc. 46, p. 8)) and Loyola University Chicago (from which Plaintiff Koy graduated (*see id.*, p. 10)) and the U.S. Department of Education's Federal Student Aid website. (Doc. 47, pp. 6–9, 14–15). Defendants also attached multiple Exhibits to their Motion, which are purportedly GradImages' state agency contract with SIUE (*see* Doc. 47, p. 7; Ex. A); SIUE's reference form which lists the specific requirements and laws with which its vendors must comply (*see id.*, Ex. B); GradImages' contract with Loyola University Chicago (*see id.*, Ex. C); and a Memorandum issued by the Circuit Court of Cook County, Illinois, in an unrelated case (*see id.*, Ex. E). GradImages asserts that these materials are "[p]ublicly available documents of which the Court can take judicial notice." (Doc. 47, p. 7).

Plaintiffs argue in response that this Court may not rely on the materials cited and exhibits Defendants submitted to support their Motion and that judicial notice of these materials is improper. (Doc. 51, p. 7, citing *Geinosky*, 675 F.3d at 745, n.1; *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018)).

We begin our analysis by clarifying the world of materials to which this Court is limited when analyzing a Rule 12(b)(6) motion: the complaint itself, documents attached to and critical to the complaint, and information subject to proper judicial notice. *See Geinosky*, 675 F.3d at 745, n.1. Plaintiff alleges four violations of BIPA against Defendants Balfour & Co., Commemorative Brands Illinois, and Iconic Group, which it alleges are private entities as defined by BIPA. Plaintiffs did not refer to Defendants as affiliates of financial institutions or state agency contractors in its Complaint nor provide any documentation or materials on this point in the Complaint.

"A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing FED. R. EVID. 201(b); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995)). As the court in *General Electric* explained:

> Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence. [citation] Judicial notice, therefore, merits the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts.

*Id.* (citing FED. R. EVID. 201 advisory committee's note; *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996); *Wesley–Jessen Div. of Schering Corp. v. Bausch &*

*Lomb Inc.*, 698 F.2d 862, 865 (7th Cir. 1983)). Evidentiary concerns may also guide a court in its determination of whether a document or piece of evidence is not appropriate for judicial notice. *See In re Lisse*, 905 F.3d 495, 496–97 (7th Cir. 2018) (discussing that a document was not an appropriate material for the court to take judicial notice of pursuant to Federal Rule of Evidence 201 because of evidentiary concerns including a documents authenticity under Rules 901 to 903, whether signatures are real or forged, whether the document is an original or an admissible duplicate under Rule 1003, and whether the document is relevant under Rule 402).

Under this standard, it is not appropriate for this Court to take into consideration the website links or exhibits provided by the Defendants as judicially noticeable facts. Plaintiffs dispute most of the materials GradImages puts forward in its Motion, (*see* Doc. 51, pp. 9–10), and the materials are not clearly presenting information generally known within the territorial jurisdiction of this Court nor are they capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Gen. Elec.*, 128 F.3d at 1081. Moreover, the Court is not satisfied that all of the materials are not subject to evidentiary concerns (which, Plaintiffs argue, they have not been given the appropriate opportunity to raise), including the authenticity and relevance of links to university websites and purported contracts between GradImages and universities. As such, this Court finds that judicial notice of the materials submitted in Defendants' Motion are not appropriate for consideration in its 12(b)(6) analysis.

What remains for this Court, then, is to determine whether the Plaintiffs' First Amended Class Action Complaint states sufficient factual matter, accepted as true,

which states a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678, *Twombly*, 550 U.S. at 570. This Court concludes that it does. Plaintiffs have plausibly alleged that Balfour & Co., Commemorative Brands Illinois, and Iconic Group are private entities subject to BIPA. Further, Plaintiffs have standing to bring and have plausibly alleged four violations of BIPA by Defendants. Defendants cannot argue that the statute does not apply to them at this stage, nor has any affirmative defense been conclusively established. As such, Plaintiffs' claims survive Defendants' Motion to Dismiss.

## CONCLUSION

For the reasons set forth above, Defendants Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 27, 2025**

<u>**s/ Stephen P. McGlynn**</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**