## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA GAERTNER and CARSON KOY, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>COMMEMORATIVE BRANDS, INC., *et al.*,<br><br>**Defendants.** | Case No. 23-CV-02452-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court on Plaintiffs' Motion for Class Certification. (Doc. 91). Having been fully informed of the issues presented, Plaintiffs' Motion is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This proposed class action arises under the Illinois Biometric Information Privacy Act, 740 ILL. COMP. STAT. 14/1–99 ("BIPA"). BIPA regulates the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. *Id.* § 14/5(g); *see also Tims v. Black Horse Carriers, Inc.*, 216 N.E.3d 845, 850 (Ill. 2023). BIPA defines biometric identifiers to include retina or iris scans, fingerprints, voiceprints or scans of hand or facial geometry. *Id.* § 14/10. BIPA applies to private entities, which include corporations and similar organizations, but excludes state agencies, local government bodies, Illinois courts, clerks of court, and judicial officers. *Id.*

Section 15(b) of BIPA requires private entities that obtain biometric identifiers or information to provide written notice of the collection, to explain the purpose and retention period, and to secure a written release. *Id.* § 14/15(b); *Fox v. Dakkota Integrated Sys.*, LLC, 980 F.3d 1146, 1150 (7th Cir. 2020). Section 15(c) prohibits private entities from selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or information. BIPA § 14/15(c); *see Mayhew v. Candid Color Sys., Inc.*, 743 F. Supp. 3d 994 (S.D. Ill. 2024). BIPA provides a private right of action and permits recovery of damages, reasonable attorneys' fees and costs, and injunctive relief. BIPA § 14/20.

GradImages photographs graduation ceremonies nationwide and sells the images through its website, which can be searched by name, school, or graduation year. (Docs. 91, 94). At each ceremony, GradImages captures a photograph of each graduate as they cross the stage and also takes candid "public relations" or "PR" photographs before and after the event. (Doc. 91, pp. 3–4). Because PR photographs are taken spontaneously, GradImages is not always able to identify the graduates depicted at the time they are taken. (*Id.*). Historically, these photographs were uploaded to an online gallery that required graduates to browse through the entire set of images from an event to locate their own. (*Id.*).

To streamline this process, GradImages began using facial recognition technology to identify individuals who appear in PR photographs and to market those photographs directly to them. (*Id.*, p. 1). Plaintiffs submitted evidence taken from GradImages' website that describes the process as follows. (*Id.,* pp. 1–6). First, GradImages photographs graduates during commencement ceremonies and uploads

the images to its servers. (*Id.*, p. 4). It then sends those images to Microsoft, its facial recognition vendor, whose Azure software analyzes each face and attempts to match it to a name previously identified when the graduate walked across the stage. (*Id.*). This matching process allows GradImages to link candid PR images with the correct graduate's identity. (*Id.*). Once the matches are made, the photos are returned to GradImages and posted on its website for sale. (*Id.*, p. 2). GradImages then invites graduates to purchase the images linked to their names. (*Id.*). Defendants assert that this process occurs outside the purview of GradImages. (*Id.*, Exs. C; D; E, pp. 9–10; H, pp. 5–7). They note that GradImages only ever possesses the photographs, be it before or after the sorting process, and that GradImages "does not collect, capture, obtain, possess, access, or sell biometrics." (Doc. 94, p. 4).

Plaintiffs allege that this process was used on their images at their respective graduation ceremonies. Plaintiff Josh Gaertner graduated from Southern Illinois University Edwardsville and attended the commencement ceremony held in May of 2023 in Edwardsville, Illinois. (Doc 91*,* p. 5). Plaintiff Carson Koy graduated from Loyola University Chicago and attended the school's commencement ceremony held in May of 2022 in Chicago, Illinois. (*Id.*). Plaintiffs contend that GradImages photographed each of them at their ceremonies and transmitted those images for facial recognition processing. (*Id.*, Ex. A 103:24–105:2, 214:11–16, 215:10–216:6; *Id.*, Ex. B 111:4–113:11, 115:1–11, 117:12–120:8). GradImages then posted the resulting images for sale on its website and sent marketing communications soliciting Plaintiffs to purchase the photographs. (*Id.*, Ex. A 110:5–111:19, 185:20–188:19; Ex. B 115:8–116:9). Plaintiffs allege that this conduct violated Section 15(b) of BIPA by

collecting their biometric identifiers without the required written notices, and without obtaining a written release. (*Id.*, pp. 5–6). Plaintiffs further allege a violation of Section 15(c) based on Defendants' use of their biometrics to facilitate the sale of photographs for profit. (*Id.*, p. 6).

Plaintiffs filed this putative class action on July 14, 2023. (Doc. 1). On November 11, 2024, Joshua Gaertner sought leave to file a First Amended Class Action Complaint (Doc. 44), which the Court granted the following day (Doc. 45). Two additional Plaintiffs, Wesley Janicki and Carson Koy, then joined the case, though Janicki later voluntarily dismissed his claims on January 13, 2025. (Docs. 53, 54). On November 21, 2024, Defendants filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), which this Court denied on March 27, 2025. (Docs. 47, 61). Plaintiffs submitted their Motion for Class Certification and Memorandum in Support Thereof on September 5, 2025. (Doc. 91). Defendants submitted their response on October 10, 2025, (Doc. 94), and Plaintiffs submitted their Reply brief on October 24, 2025, (Doc. 97).

## APPLICABLE LAW AND LEGAL STANDARDS

Under Rule 23(a), a class may be certified only if the proposed representatives establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). If these prerequisites are met, a class action may proceed under Rule 23(b)(3) if the Court finds that questions of law or fact common to class members predominate over

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

In evaluating class certification, the Court must look beyond the pleadings and may consider evidence on any disputed material issue. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001)). Although "the merits are not on the table," plaintiffs bear the burden of proving by a preponderance of the evidence that each element of Rule 23 is satisfied. *Beaton*, 907 F.3d at 1025 (citing *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)). The decision whether to certify a class lies within the court's broad discretion. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 894 (7th Cir. 2024) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 1997)). Rule 23 further requires that any certification order appoint class counsel, define the class, and set out the claims, issues, or defenses to be adjudicated. FED. R. CIV. P. 23(c)(1)(B), (g).

## ANALYSIS

As a threshold matter, the Court must assure itself of subject-matter jurisdiction before addressing class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship

between the parties and the matter in controversy exceeds $75,000. *See* 28 U.S.C. §
1332(a)(1); *LM Ins. Corp. v. Spaulding Enters. Inc.,* 533 F.3d 542, 547 (7th Cir. 2008).
Alternatively, jurisdiction may also be present under 28 U.S.C. § 1332(d)—the Class
Action Fairness Act—because the proposed class has 100 or more members, minimal
diversity of citizenship exists, and the amount in controversy exceeds $5,000,000 in
the aggregate. *See* 28 U.S.C. § 1332(d); *Dart Cherokee Basin Operating Co., LLC v.
Owens*, 574 U.S. 81, 84–85 (2014).

Turning now to the substance of the Motion for Class Certification, Plaintiffs
seek to certify the following class:

> All individuals depicted in photos taken by GradImages in the
> State of Illinois and submitted for facial recognition on or after
> July 14, 2018.

(Doc. 91, p. 6). Excluded from the Class are

> (1) any Judge or Magistrate presiding over this action and
> members of their families; (2) Defendants, Defendants'
> subsidiaries, and any entity in which the Defendants or their
> parents have a controlling interest and its current or former
> employees, officers and directors; (3) persons who timely request
> exclusion from the Class; (4) persons whose claims have been
> finally adjudicated on the merits or otherwise released; (5)
> Plaintiffs' counsel and Defendants' counsel; and (6) the legal
> representatives, successors, and assigns of any such excluded
> persons.

(*Id.*).

Both sides acknowledge that the proposed class definition differs from the
definition set out in the First Amended Complaint. (*Id.*, p. 6 n.25; Doc. 94, p. 3). The
original definition covered "[a]ll residents of the State of Illinois whose biometric
information or biometric identifiers were collected, captured, purchased, received

through trade, or otherwise obtained by, or profited from by Defendants while residing in Illinois." (Doc. 46). This Court concludes that the revised definition is permissible. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (noting that Rule 23(c)(1)(B) places the responsibility for defining the class on the Court, and that certification does not require amending the complaint); *Messner*, 669 F.3d at 825 (observing that class definitions "can and often should be refined" to address potential issues).

## I.    Class Ascertainability

For a class to be certified, a plaintiff must show that the class is "indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). This means that a class definition cannot be so vague as to be insufficiently definite. *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). GradImages contends that the revised class definition renders the proposed class overbroad and therefore uncertifiable. (*See* Doc. 94, p. 22 (citing *Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 678 (7th Cir. 2009) (explaining that a class is not ascertainable if its definition includes individuals who could not have been injured by the defendant's conduct)). In support of their position, GradImages advances three arguments. First, it asserts that BIPA does not apply to non-Illinois residents and may not be applied extraterritorially. (Doc. 94, pp. 22–23). Second, it argues that because the proposed class definition omits elements required to establish a BIPA violation, the class may include individuals whose claims fall outside the statute's scope. (*Id.*, p. 23). Third, GradImages maintains that the class lacks ascertainability because determining class membership would require individualized findings as to

each person's Illinois residency, a process it claims would be unduly burdensome. (*Id.*, pp. 23–24).

### a.    Extraterritoriality

The Court first addresses Defendants' argument that BIPA cannot be applied extraterritorially. Defendants contend that, because BIPA does not reach non-Illinois residents, Plaintiffs' amended class definition is overbroad. (*Id.*, pp. 22–23). This Court disagrees.

While Illinois has a general presumption against extraterritoriality, the Illinois Supreme Court has noted that statutes can be applied extraterritorially if clear intent "appears from the express provisions of the statute" or if the circumstances that gave rise to the cause of action occurred "primarily and substantially" within Illinois. *See Avery v. State Farm Mut. Autom. Ins. Co.,* 835 N.E.2d 801, 852–54 (Ill. 2005); *see also* William S. Dodge, *Presumptions Against Extraterritoriality in State Law*, 53 UC DAVIS L. REV. 1389, 1404 (2020). On its face, BIPA is not such a statute whose provisions indicate an extraterritorial effect. *See Ronquillo v. Doctor's Assocs., LLC,* 597 F. Supp. 3d, 1227, 1233 (N.D. Ill. 2022) (citing *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017)). However, the circumstances of this case primarily and substantially occurred within the state of Illinois.

The question of whether the alleged violations of BIPA "primarily and substantially" occurred in Illinois is a factual determination. *See Avery,* 835 N.E.2d at 854. The Illinois Supreme Court stated that these circumstances include factors such as a plaintiff's residency, the location of the harm, where the parties sent and

received communications, and where the defendant carried out any policy at issue.
*See id.* at 853–54. Federal courts have dealt specifically with this question under
BIPA claims and have arrived at different results. In *Sloan v. Anker Innovations Ltd.,*
consumers brought a class action against companies that produced home security
cameras and video doorbells, alleging misrepresentations about storage and
encryption of data captured by the devices. 711 F. Supp. 3d 946 (N.D. Ill. 2024).
Regarding the applicability of the cause of action to non-Illinois plaintiffs, the
Northern District of Illinois found that because the data had been collected from
devices in plaintiffs' homes which existed outside of Illinois, that plaintiffs all
experienced their alleged harm outside the state of Illinois, and that BIPA did not
apply in those circumstances. *Id.* at 958. Conversely, in *Wilk v. Brainshark,* an
employee brought a putative class action claiming BIPA violations where a company
used facial-mapping technology on videos submitted at the employer's request to
identify emotions and performance indicators. 631 F. Supp. 3d 522 (N.D. Ill. 2022).
There, even though the precise location of the scanning was unclear, the Northern
District of Illinois found the conduct sufficiently Illinois-centered because the videos
were taken and uploaded in Illinois by residents of Illinois for an Illinois employer.
*Id.* at 527–28.

Considering the record here, the Court concludes that the relevant conduct
occurred primarily and substantially in Illinois. The photographs were taken in
Illinois, at Illinois universities, and were presumably uploaded in Illinois. (Doc. 91,
p. 5; Doc. 97, p. 10). Further, BIPA's requirement for a written release to collect and
use biometric data would have been violated in Illinois. The only factor that arguably

favors GradImages is the location of the facial-geometry scanning. The record reflects that the photographs were uploaded to a server located in Florida, transmitted to Microsoft for processing, and then sent back to the Florida server. (Doc. 91, Ex. C, pp. 9–10). Thus, the scanning either occurred online—without a meaningful physical location—or it occurred outside of Illinois. The Court will consider both possibilities.

Determining the "location" of online conduct is inherently difficult. As noted in *Rivera v. Google, Inc.*, the cases setting out the "primary and substantially" limits have not provided much guidance for online conduct. 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017). In *Specht v. Google, Inc.*, the court held that an infringement that "took place on the internet and was international in scope," in combination with other Illinois-centric factors, was enough to establish extraterritoriality under the *Avery* test. 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009). By contrast, extraterritoriality was not established in *Shaw v. Hyatt International Corp.*, where a London-based plaintiff accessed a hotel's website to book a room in Moscow and later brought an Illinois Consumer Fraud Act claim in Illinois. No. 05 C 5022, 2005 WL 3088438, at *2–3 (N.D. Ill. Nov. 15, 2005), *aff'd*, 461 F.3d 899 (7th Cir. 2006). There, the court concluded that the defendant's Illinois principal place of business and the website's Illinois choice-of-law provision were too attenuated to show that the relevant transaction occurred "primarily and substantially" in Illinois. *Id*. These cases suggest that when online conduct is paired with Illinois-centered circumstances, extraterritoriality may be satisfied; conversely, when the Illinois connection is minimal, it is not.

Alternatively, even if the scanning were shown to have occurred at a physical location outside Illinois, that fact alone is not dispositive. As the Illinois Supreme

Court cautioned, "the place of injury or deception is only one of the circumstances that make up a fraudulent transaction and focusing solely on that fact can create questionable results." *Avery*, 835 N.E.2d at 853. Other courts have similarly rejected a server-location centric approach. *See e.g., In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd*, 932 F.3d 1264 ("Making the geographic coordinates of a server the most important circumstance in fixing the location of an internet company's conduct . . . would effectively gut the ability of states without server sites to apply their consumer protection laws to residents for online activity that occurred substantially within their borders."). Therefore, although in this case some of the conduct may have occurred outside Illinois, the totality of the circumstances still points to Illinois as the primary locus of the conduct.[1]

In evaluating class certification, the Court must look beyond the pleadings and may consider evidence on any disputed material issue. *Beaton*, 907 F.3d at 1025 (citing *PNC Bank,* 800 F.3d at 377; *Szabo*, 249 F.3d at 675–76). Courts also retain broad discretion at the class certification stage. *Jacks,* 118 F.4th at 894 (quoting *Chavez*, 251 F.3d at 629). Here, a preponderance of the evidence on the record shows that the conduct giving rise to Plaintiffs' claims occurred primarily and substantially in Illinois. The Court therefore finds the class is not overbroad on extraterritoriality grounds at this stage.

As other courts have recognized, extraterritoriality is often addressed at the motion to dismiss stage, with the understanding that additional discovery may refine

---

[1] Courts have taken the totality of the circumstances approach when analyzing extraterritoriality at the pleading stage and beyond. *See Rivera*, 238 F. Supp. 3d 1088; *Monroy,* 2017 WL 4099846.

the analysis at the summary judgment stage. *Wilk*, 631 F. Supp. 3d at 528 (citing *Rivera,* 238 F. Supp. 3d at 1102). Because this case is at the class-certification stage— further along than a motion to dismiss but short of summary judgment—the parties will have the opportunity to develop additional facts during merits discovery. GradImages may renew its extraterritoriality argument if warranted.

### b.    Elements of BIPA

Defendants next argue that the proposed class definition is improper because it does not include the statutory elements of a BIPA violation. (Doc. 94, p. 23). This argument is unavailing.

Rule 23 does not require that a class definition replicates the elements of the underlying cause of action and courts routinely certify classes defined by objective criteria rather than by ultimate liability. As Plaintiffs note, including the elements of liability in the definition risks creating a "fail-safe" class, one in which membership turns on proving the defendant's wrongdoing, which is improper. (*See* Doc. 97, p. 11 (citing *Messner*, 669 F.3d at 825)); *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015).

BIPA classes are frequently certified without embedding Section 15's requirements into the class definition. *See Howe v. Speedway LLC,* No. 1:19-CV-01374, 2024 WL 4346631, at *15 (N.D. Ill. Sept. 29, 2024); *Svoboda v. Amazon*, No. 21 C 5336, 2024 WL 1363718, at *4 (N.D. Ill. Mar. 30, 2024); *Tapia-Rendon v. United Tape & Finishing Co.,* No. 21 C 3400, 2023 WL 5228178, at *5 (N.D. Ill. Aug. 15, 2023). The absence of statutory elements in the class definition does not broaden BIPA's reach or lessen Plaintiffs' burden of proof; it simply avoids defining class

membership by the merits. Whether GradImages "collected" or "otherwise obtained" biometric identifiers, complied with Section 15(b), or "profited from" biometrics under Section 15(c) are issues reserved for the liability phase. Accordingly, the Court rejects Defendants' argument. The omission of BIPA's elements does not render the class definition impermissibly broad.

### c.    Class Identification

Finally, GradImages argues that the class definition is improper because it is not sufficiently ascertainable—by which they assert that class membership must be determinable through precise, objective criteria. (*See* Doc. 94, pp. 23–24 (citing *Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 108 (N.D. Ill. 2023)). The Seventh Circuit requires only that a proposed class must be "indeed identifiable as a class." *Oshana,* 472 F.3d at 513. GradImages contends that a residency requirement would necessitate individualized inquiries and would therefore be too burdensome to satisfy this standard. (*See* Doc. 94, pp. 23–24). As explained in the Court's analysis on extraterritoriality, residency is not a part of the class definition and is not at issue.

Even if residency were relevant, GradImages' argument misstates the governing standard. The cases they cite involve situations where identifying class members was much more burdensome than determining residency. (Doc. 94, p. 23). In one case cited by GradImages, *Franks v. MKM Oil, Inc.*, the court found ascertainability was lacking because class membership depended on identifying employees who had made undocumented cash payments to managers, based on receipts that were either unavailable or failed to identify the affected employees. No. 10-00013, 2012 WL 3903782, at *7 (N.D. Ill. Sept. 7, 2012); (*see* Doc. 94, p. 23 (citing

the same)). That situation bears little resemblance to determining where an individual resides. Another case cited by GradImages, *Pastor v. State Farm Mutual Automobile Insurance Co.* likewise involved substantial practical obstacles to identifying class members. No. 05-1459, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005), *aff'd*, 487 F.3d 1042 (7th Cir. 2017); (*see* Doc. 94, p. 23 (citing the same)). The court there would have had to conduct an individualized inquiry into whether each class member's car was "usable" under the insurance contract—an inquiry not objectively determinable from State Farm's records. *Pastor,* 2005 WL 2453900.

By contrast, residency can be determined in a straightforward manner, including through self-reporting. *See Facebook*, 326 F.R.D. at 548; *see also Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344, 348 (citing *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007)) ("it is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not 'so daunting as to make the class definition insufficient.'"). Accordingly, the class definition relies on objective criteria and is identifiable. It is therefore not overbroad.

## II.    Rule 23(a) Requirements

Having established that the class is ascertainable, the Court now turns to its statutory Rule 23 requirements. Under Rule 23(a), the proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Messner*, 669 F.3d at 811.

###### a.     Numerosity

Rule 23(a)(1) requires an assessment of whether the proposed class is of such size and composition that individualized joinder of all members would be impracticable. FED. R. CIV. P. 23(a)(1). The Seventh Circuit has recognized that "a forty-member class is often regarded as sufficient to meet the numerosity requirement," *Orr v. Shicker,* 953 F.3d 490, 498 (7th Cir. 2020) (quoting *Mulvania v. Sheriff of Rock Island County,* 850 F.3d 849, 859 (7th Cir. 2017), but, a class of forty or more does not guarantee numerosity, *see Pruitt v. City of Chicago* 472, F.3d 925, 926 (7th Cir. 2006). Rule 23(a)(1) requires a showing that joinder of all class members would be impracticable, not merely less convenient. FED. R. CIV. P. 23(a)(1). The inquiry focuses on the practical obstacles of joining all affected individuals rather than on the sheer number of potential class members. *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). In assessing whether joinder is impracticable, courts consider the nature of the action, the size of the individual claims, and the geographic dispersion of potential class members. *See Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021).

Here, the numerosity requirement is plainly satisfied. GradImages' own records show that during the Class Period, photographers captured images at more than 500 events involving approximately 190,000 graduates. (Doc. 91, p. 8 (citing *id.*, Ex. J, ¶ 10(a)). Given the large number of affected individuals, the geographic spread of graduation events, and the modest, individualized value of each claim, it would be exceedingly difficult to individually locate, contact, and litigate the rights of every affected graduate through joinder. *See Pietrzycki v. Heights Tower Serv., Inc.*, 197 F.

Supp. 3d 1007, 1018 (N.D. Ill. 2016) (certifying class of 90 members); *Mussat v. Global Healthcare Res., LLC*, No. 11 C 7035, 2013 WL 1087551, at *4 (N.D. Ill. March 13, 2013) (certifying class of 87 members). These practical barriers to assembling all class members satisfy Rule 23(a)(1)'s numerosity requirement.

### b.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "One common question is enough, but not just any question will do." *Howard v. Cook Cnty. Sheriff's Office,* 989 F.3d 587, 598 (7th Cir. 2021). Commonality is satisfied when the class's claims depend on a common contention that is capable of class-wide resolution; that is, determining its truth or falsity will resolve an issue central to each class member's claim "in one stroke." *Wal-Mart*, 564 U.S. at 349–50; *Howard*, 989 F.3d at 598. Thus, when the same conduct or uniform policy by the same defendant gives rise to the same type of injury or legal claim for all class members, commonality is met. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Ross v. Gossett*, 33 F.4th 433, 438 (7th Cir. 2022); *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010). Conversely, when a defendant's injurious conduct differs from plaintiff to plaintiff, common answers are unlikely. *See Suchanek,* 764 F.3d at 756; *Wal-Mart,* 564 U.S. at 356–57.

Courts have routinely found commonality in BIPA class actions. *See Gunderson v. Amazon, Inc.,* No. 19-CV-05061, 2025 WL 3228934, at *3 (N.D. Ill. Nov. 19, 2025) (finding commonality satisfied where Amazon "sold, leased, traded, or otherwise profited from Plaintiff's biometric data"); *Howe*, 2024 WL 4346631, at *15 (finding commonality where the common question was, among others, whether

Speedway's timeclocks "collected, captured, or otherwise obtained . . . protected biometrics under BIPA section 15(b)"); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 854348, at *2 (N.D. Ill. Mar. 22, 2022) (finding commonality where BNSF collected biometric data in a standardized manner upon a driver's visit to a BNSF facility). In particular, *Svoboda* saw commonality satisfied in a case where the unlawful conduct alleged was Amazon's scanning of facial geometry. 2024 WL 1363718, at *8. In that case, the Court recognized that the common questions to defendants included whether: (1) the data collected was biometric information under BIPA; (2) this constituted collection or possession of biometric data under BIPA; (3) whether this was disclosed to users of Amazon; (4) whether Amazon obtained written releases; (5) whether Amazon developed a publicly available written policy governing their use of biometric data; and (6) whether Amazon's use of biometric data was negligent intentional or reckless. *Id*. All these common questions were determined in reference to the BIPA statute. *Id*. (citing BIPA § 14/10).

The Court finds these authorities persuasive. As in *Svoboda* and other BIPA class actions, common questions of law and fact arise from GradImages' uniform conduct toward all putative class members. Plaintiffs identify several such questions, including: (1) whether GradImages obtained biometric identifiers or information through its facial-recognition process; (2) if so, whether GradImages complied with Section 15(b)'s notice and consent requirements; and (3) whether GradImages "profited from" Plaintiffs' and putative class members' biometrics in violation of BIPA § 14/15(c). (Doc. 91, p. 10). The record reflects that GradImages follows a standardized process by which it photographed students and, allegedly, used their biometric data

to facilitate marketing of those photographs. (Doc 59, Ex. A, pp. 12–15). This uniform process parallels the conduct found in *Svoboda*, involving Amazon's collection of biometric data, and in *Rogers v. BNSF*, involving BNSF's routine biometric collection from drivers entering its facility. GradImages' conduct gives rise to common legal questions under BIPA, the resolution of which will determine issues central to each class member's claims. *See Wal-Mart*, 564 U.S. at 349–50. Therefore, the commonality requirement is satisfied.

GradImages argues that commonality is not satisfied because certain individualized inquiries may arise. (Doc. 94, pp. 24–28). They point to potential differences regarding whether a given graduation ceremony was public or private, whether each individual viewed GradImages' terms of use, and how damages should be calculated. However, these arguments are misplaced. (*Id*.). Such individualized issues are properly addressed under the predominance analysis of Rule 23(b)(3). The relevant question for commonality is whether the defendant's standardized conduct creates common questions of law or fact, not whether every aspect of the case is uniform. *See Rogers,* 2022 WL 854348, at *2. Rule 23(a)(2) asks whether plaintiffs have "suffered the same injury" and can assert claims that "depend upon a common contention." *Wal-Mart,* 564 U.S. at 338 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 152 (1982)). Here, the common contention is whether GradImages violated specific provisions of BIPA. Accordingly, the Court finds that Rule 23(a)(2)'s commonality requirement is satisfied. The Court will consider GradImages' individualized-inquiry arguments under Rule 23(b)(3).

### c.    Typicality

Rule 23(a)(3) requires that the class representatives' claims rest on the same legal theory and arise from the same event, practice, or course of conduct as the claims of the other class members. *See Howard,* 989 F.3d at 605 (quoting *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998); *Oshana,* 472 F.3d at 514 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The typicality requirement serves to ensure that the named plaintiffs' claims have the same essential characteristics as those of the class, thereby creating sufficient alignment between the representatives and absent class members. *See Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018). This alignment provides the assurance that, in pursuing their own claims, the representatives will also advance the interests of the class. *See Howard,* 989 F.3d at 605 (citing 1 NEWBERG & RUBENSTEIN, CLASS ACTIONS § 3:18 (5th ed. 2012)).

Although closely related to commonality, typicality is a distinct requirement that focuses on the attributes of the class representatives rather than the shared characteristics of the class as a whole. *Id.*; *see also Wal-Mart*, 564 U.S. at 349 n.5. Factual differences among class members, such as variations in the precise circumstances of their injuries, do not defeat typicality so long as their claims share the same essential nature and arise from the defendant's uniform conduct. *See Oshana,* 472 F.3d at 514; *Beaton*, 907 F.3d at 1026. Ultimately, typicality is satisfied when the representative's pursuit of their own claims is likely to vindicate the claims of the class as a whole, thereby making class treatment both fair and efficient.

Similar to the commonality requirement, typicality is frequently established in BIPA class actions. *See In re Tiktok, Inc., Consumer Priv. Litig.,* 617 F. Supp. 3d

904, 922 (N.D. Ill. 2022); *Facebook*, 326 F.R.D. at 543–44; *Rogers,* 2022 WL 854348, at *2. Here again, *Svoboda* provides a good example. There, typicality was satisfied where the plaintiff sought to certify a class of people who had used the same software to capture their facial geometry. 2024 WL 1363718, at *2–3, *7–8. The plaintiff's claims were representative of the class because they arose from the same biometric-collection process. *See id*. at *7–8.

Gaertner and Koy seek to certify a class of individuals whose claims arise from the alleged capture and use of biometric data for profit in violation of BIPA. (*See* Doc. 91). Nothing in the record suggests that their claims are atypical or meaningfully different from those of the putative class. Further, although a class representative may be atypical or inadequate if subject to a substantial defense unique to that individual, the factual issues GradImages raises under Rule 23(a)(2)—such as whether a graduation ceremony was public or private or whether a particular individual viewed GradImages' terms of use—do not alter this analysis. *Gunderson*, 2025 WL 3228934, at *5 (citing *Westmoreland v. Hughes*, 144 F.4th 952, 955–56 (7th Cir. 2025)). The Seventh Circuit has explained that typicality may be defeated only where an affirmative defense applies uniquely to the named plaintiffs or to a small subset of the proposed class. *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980). Here, the potential factual distinctions identified by Defendants do not present defenses unique to Gaertner or Koy, nor do they apply to only a small portion of class members.

Gaertner and Koy each had their photographs taken at a graduation ceremony and allegedly had those photographs scanned for facial geometry in violation of BIPA.

(Doc 91, p. 2). This is the same conduct underlying the claims of all putative class members. Their pursuit of this litigation will therefore materially advance the interests of the class. Moreover, Defendants do not meaningfully contest typicality in their briefing. The Court is satisfied that Gaertner and Koy's claims are typical of the proposed class and finds that Rule 23(a)(3) is satisfied.

### d.    Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiffs "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy inquiry has two components. First, the Court evaluates "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Second, the Court assesses "the adequacy of the proposed class counsel." *Id*. Class counsel must be "competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Arenson*, 164 F.R.D. at 664 (citing *Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1159 (N.D. Ill. 1995)); *see also Urlaub v. CITGO Petrol. Corp.*, 348 F.R.D. 319, 326 (N.D. Ill. 2024) (citing *Wachala v. Astellas US LLC*, No. 20 C 3882, 2022 WL 408108, at *5 (N.D. Ill. Feb. 10, 2022)); *Gomez*, 649 F.3d at 592 (citing *Greisz v. Household Bank (Ill.)*, N.A., 176 F.3d 1012, 1013 (7th Cir. 1999)).

### i.    Adequacy of Class Representatives

Plaintiffs argue that Gaertner and Koy are adequate class representatives because they share the same interests and alleged injury as the putative class and possess a sufficient stake in the litigation to ensure vigorous advocacy. (Doc. 91, p.

12). Defendants assert that Gaertner and Koy lack the necessary judgment, credibility, and veracity to serve as class representatives, and that their involvement so far has been merely nominal. (Doc. 94, pp. 14–18). The Court agrees with Plaintiffs.

A plaintiff is adequate so long as their claims neither conflict with nor are antagonistic to those of other class members. *Howard*, 989 F.3d at 609–10. The purpose of this inquiry is to identify any conflicts between the named representatives and the putative class, as well as conflicts within the class itself. *Id.; see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Courts also consider whether the named plaintiffs have sufficient interest in the outcome to ensure vigorous advocacy. *Urlaub*, 348 F.R.D. at 326; *see also Wachala*, 2022 WL 408108, at *5. "A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011)).

As discussed above, the named Plaintiffs were subject to the same challenged conduct and purported injury as the class they seek to represent. Although certain individualized issues may arise later in the litigation, they do not bear on adequacy because they create no conflict of interest. Differences such as attending different universities or viewing different terms of use do not create any conflict among them or with the named Plaintiffs. Accordingly, this Court finds no conflict of interest. Moreover, even if minor intraclass tensions were to arise, the Seventh Circuit has emphasized that the mere possibility of such "trivial" conflicts does not defeat

certification; if actual conflicts materialize, the Court may create subclasses. *Howard*, 989 F.3d at 609–10 (quoting *Abbott*, 725 F.3d at 813).

In addition, the record supports the finding that Gaertner and Koy will vigorously represent the class. Both demonstrated in their depositions that they understood the nature of the litigation and their responsibilities as class representatives. (Doc. 91, Ex. A. 42:13–18, 137:19–138:1, 150:16–21, 122:16–123:3; *id.*, Ex. B 31:19–32:9, 141:11–17, 159:2–10, 16:5–8, 16:20–17:7). This evidence confirms that they possess sufficient interest in the outcome and will adequately protect the interests of the class.

GradImages challenges the adequacy of Gaertner and Koy on two grounds. First, it contends that both representatives lack judgment, credibility, and truthfulness. (Doc. 94, p. 14). Second, it asserts that they have not meaningfully participated in the litigation and lack even a basic understanding of the case, their responsibilities as class representatives, or the identity of their own counsel. (*Id.*). The Court addresses the latter argument first.

GradImages identifies several portions of Gaertner and Koy's deposition testimony that, in their view, reflect an inadequate familiarity with the case, their responsibilities as class representatives, or their relationship with counsel. They highlight, among other things, that: (1) Plaintiffs do not know the procedural status of the case or whether a class has been certified; (2) they do not know the identity of the current or former parties to the lawsuit; (3) they do not know whether they reviewed or approved the First Amended Complaint before its filing; and (4) they are unaware whether they owe fiduciary duties to class members. (*Id.*, pp. 16–18).

These concerns exceed what Rule 23(a)(4) requires. In the Seventh Circuit, the role of the class representative is nominal as class counsel manages the litigation. *See Philips v. Asset Acceptance LLC.*, 736 F.3d 1076, 1080 (2013). Courts routinely hold that adequacy requires the representative only have a basic understanding of the case, *Randle v. GC Servs., L.P.,* 181 F.R.D. 602, 604 (N.D. Ill. 1998), and that understanding the minutiae of a case is not required, *see Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005) (citing *Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir. 2002). Indeed, courts have found adequacy in cases involving far more limited knowledge than is alleged here. *See Paper Sys. Inc. v. Mitsubishi Corp.,* 193 F.R.D. 601, 608–10 (E.D. Wis. 2000) (representative adequate despite lacking personal knowledge of many assertions in the complaint); *Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 WL 5867818, at *8 (C.D. Ill. 2016) (representatives adequate despite being unable to recall reviewing pleadings or affidavits.). GradImages relies on *Seiden v. Nicholson* to support their assertion that a proposed representative that lacks substantial familiarity with the facts of the case will be found inadequate. (Doc. 94, p. 17) (citing 69 F.R.D. 681, 688 (2007)). But in that case, representatives had never seen a copy of the original complaint and "lacked personal knowledge of the factual basis for many of the plaintiffs' allegations." *Seiden*, 69 F.R.D. at 688.

The record here reflects that Gaertner and Koy are sufficiently familiar with the case. Gaertner testified that he understands what BIPA is, how his rights were allegedly violated, and his general role as class representative. (Doc. 91, Ex. A, pp. 42, 122, 137, 150). Koy did the same. (*Id.*, Ex. B, pp. 16, 31, 141, 159). In light of this,

the Court finds it immaterial that they have spent limited time communicating with counsel or were notified of this potential litigation via a targeted social media ad by counsel.

When viewed in context, many of GradImages' criticisms lose force. For example, GradImages points to the fact that Gaertner did not know at the time of his deposition the name of the law firm that is representing him. (Doc. 94, p. 7). But the transcript reflects that Gaertner correctly identified his attorneys by name and simply failed to distinguish between two similarly named entities. (*Id.*, Ex. B, p. 16:18–24).

GradImages also argues that Gaertner and Koy provided "demonstrably false" testimony, which calls into question their adequacy to serve as representatives (*Id.*, p. 10). GradImages bases this assertion on Koy's alleged failure to initially list certain individuals with whom she discussed the litigation, and Gaertner's statement that he "closely reviewed his interrogatory answers via the DocuSign process," among other discrepancies. (*Id.*). The record does not support such a characterization.

Defendants rely on *In re Northfield Laboratory, Inc. Securities Litigation* to argue inadequacy of a class representative when false testimony is given. (*Id.* (citing 267 F.R.D. 536 (2010)). However, in *Northfield*, the proposed representative was found inadequate due to what the court perceived as a "willingness to give a false answer." 267 F.R.D. at 542. No such intentional falsehoods are found in this case.

GradImages argues that Koy failed to disclose conversations she had with GradImages in his initial interrogatory responses. (Doc. 94, p. 10). However, her deposition makes clear that the conversations with individuals which GradImages

argues should have been disclosed in the initial interrogatory responses did not occur until *after* the responses were filed. (*See* Doc. 94, Ex. A 86:16–24, 91–93:15, 165:23–166). Once the conversations occurred, Koy supplemented her answers. (*Id.*, Ex. D, ¶ 9).

As for Gaertner, GradImages contends that he could not have closely reviewed the interrogatory answers because the "DocuSign document shows he only reviewed his answers for a mere 33 seconds prior to execution." (*Id.*, p. 10). However, as Plaintiffs point out, Gaertner's testimony later explains that he reviewed the document for the longer claimed duration *prior to* viewing the document through DocuSign. (*Id.,* Ex. B, p. 164:13–16).

The Court is unconvinced that discrepancies in testimony like this are sufficient to discredit Plaintiffs as class representatives. *See Kadia v. Gonzales,* 501 F.3d 817, 821 (7th Cir. 2007) (emphasizing that witnesses often fumble and make mistakes during testimony, and that this is not sufficient to disbelieve the entirety of their testimony). It is clear from the record that Plaintiffs have demonstrated sufficient involvement and understanding of the litigation to satisfy the standard for adequacy.

GradImages further contends that Gaertner and Koy are inadequate representatives due to credibility concerns. (Doc. 94, p. 3). While credibility can, in rare cases, disqualify a representative, the Seventh Circuit has cautioned that courts should not "derail legitimate class actions by conjuring up trivial credibility problems." *See CE Design,* 637 F.3d at 728. Disqualification requires admissible evidence that "severely undermine[s] plaintiff's credibility." *Id.*

Defendants argue that a distasteful social media post made by Koy's boyfriend involving Koy reflects an extreme lack of judgment sufficient to discredit her as a class representative. (Doc. 94, pp. 2, 11–12). The Court once again disagrees. The post in question depicted Koy and her boyfriend in a photograph sarcastically titled "cousins by chance, lovers by choice." (*Id.* p. 2). The post amassed 44,000 "likes." (*Id.)* Koy, in her deposition, acknowledged that the post was a "dumb joke" that she wouldn't want her employer to see, but that her and her boyfriend thought that their friends would see it and understand that it is satire. (Doc. 94, Ex. A, p. 202*). Courts have found adequacy despite far more troubling personal conduct unrelated to the litigation. *See Curry v. Kraft Foods Glob., Inc.,* No 10 C 1288, 2011 WL 4036129 at *4 & n.1 (ND. Ill. Sept 12, 2011) (representatives still adequate despite purchasing drugs on defendant's property, lying on job applications, or being disciplined for violence at work). Generally, disqualification is only necessary where the proposed representative displayed behavior directly indicative of dishonesty. *Id.* at *4 Disqualification is not triggered by general moral shortcomings. *Id.; see also Phipps v. Sheriff of Cook County,* 249 F.R.D. 298, 301 (N.D. Ill. 2008) (representative found adequate despite prior drug conviction). Indeed, in *Northfield*, the court found a representative adequate where he had prior been sued (not found guilty) for sexual assault, as well as medical malpractice and other employment litigation. 267 F.R.D. at 543. Accordingly, this Court finds Koy's boyfriend's social media post to be irrelevant to her ability to serve as a class representative. Further, this Court does

not agree that Koy engaged in spoliation because the post was deleted after her deposition, as the post is preserved in evidence.[2]

In light of the foregoing, this Court is satisfied that Gaertner and Koy are adequate class representatives.

### ii.    Adequacy of Class Counsel

Rule 23(g) provides guidance for the adequacy of proposed class counsel. In assessing adequacy, courts consider the work counsel has performed, their experience with class actions and the relevant law, and the resources they will commit to the case. FED. R. CIV. P. 23(g)(1)(A)(i)–(iv). Courts also look at the quality, diligence, care, and attention to detail reflected in counsel's litigation conduct. *See Gomez,* 649 F.3d at 593 (citing 7A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1769.1 (3d ed. 2005)).

Plaintiffs have demonstrated that the attorneys of record, John J. Driscoll and Matthew Joseph Limoli, are adequate to serve as class counsel pursuant to Rule 23(g). Attorney Driscoll has extensive experience litigating complex and class matters, including service as class counsel in multiple actions, several of which involved BIPA claims. (Doc. 91, Ex. I, ¶¶ 3–6). He has a proven track record of achieving major settlements in class action cases. (*Id.*, Ex. I). This experience weighs strongly in favor of adequacy. *See* FED. R. CIV. P. 23(g)(1)(A)(ii). Further, both Driscoll and Limoli have competently litigated the case to date, including briefing that

---

[2] Rule 37(e) regarding ESI has five threshold requirements, one of which is whether the lost ESI can be restored or replaced through additional discovery. FED. R. CIV. P. 37(e). Here, all relevant information is still available.

prevailed on Defendants' motions to compel arbitration and to dismiss. (Doc. 97, p. 9 n.8). Defendants' criticisms of the named Plaintiffs' ability to recall or preparation for depositions do not demonstrate inadequacy by counsel. As explained above, the representatives themselves are adequate, and the minor discrepancies Defendants highlight do not resemble the conduct that led courts to question adequacy in cases such as *Gomez.* 649 F.3d 583;

Defendants also fault Plaintiffs for not providing detailed financial information, which reflect on counsel's ability to commit resources to represent the class. (Doc. 94, p. 21). However, the resources of counsel, which are relevant under Rule 23(g)(1)(A)(iv), is only one factor of four that this court must consider. In any case, the Court finds it reasonable to assume, given his track record in prior litigation, that Attorney Driscoll's statement that he and his firm are prepared to offer "the resources and the proven ability to effectively represent class members" is sufficient to satisfy Rule 23(g). (Doc. 91, Ex. I, ¶ 9). Defendants further take issue with Attorney Limoli, arguing there is scant evidence of his experience in class actions. (Doc. 94, pp. 21–22). This Court is satisfied given Attorney Limoli's performance in this litigation thus far and the depth of experience of his co-counsel, that Driscoll and Limoli collectively meet the requirements of Rule 23(g)(1)(A)(ii) by a preponderance of the evidence. *See Messner,* 669 F.3d at 811.

Finally, Defendants' points regarding the registration status of The Driscoll Firm, LLC or P.C. are unavailing. Defendants point out that The Driscoll Law Firm, P.C. was not authorized to conduct business in Illinois for a period of five months during the pendency of this case. (Doc. 94, p. 21). But Defendants have not shown

that maintaining this litigation constitutes "transacting business" requiring registration, and even if it did, reinstatement under Illinois law restores an entity's existence "without interruption." *See* 805 ILL. COMP. STAT. 180/45–47(a)(1), 5/12.45(d). In any case, this allegation bears little relation to the standard required by 23(g). Considering all the relevant facts, the Court finds no basis to doubt that Plaintiffs' counsel will be "competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Arenson*, 164 F.R.D. at 664 (citing *Kriendler*, 877 F. Supp. at 1159).

Given the substantial experience of Plaintiffs' counsel, their performance in this litigation to date, and the absence of any credible indication of conflict or disloyalty, the Court concludes that Plaintiffs' counsel is adequate under Rule 23(g). Rule 23(a)(4) is therefore entirely satisfied.

## III.    **Rule 23(b) Requirements**

Rule 23 allows for class certification when the requirements of Rule 23(a) and one of the three subdivisions of Rule 23(b) are met. *See Messner*, 669 F.3d at 811. A plaintiff seeking certification under Rule 23(b)(3), as is the case here, is required to show that common questions of law and fact predominate, and that a class action is the superior method for adjudicating the dispute. FED. R. CIV. P. 23(b)(3).

### a.    **Predominance**

While similar to Rule 23(a)(2)'s commonality requirement, the predominance requirement is "far more demanding." *See Amchem,* 521 U.S. at 624. It is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication. *Messner,* 669 F.3d at 815

(quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2011)).
Predominance exists when a "common nucleus of operative facts and issues"
underlies the claims brought by the proposed class. *Id.* (quoting *In re Nassau County
Strip Search Cases,* 461 F.3d 219, 228 (2d Cir. 2006)). A question is common if the
same evidence will allow each member to make a prima facia showing on that issue.
*Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). By contrast,
an individual question is one where "members of a proposed class will need to present
evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577
U.S. 442, 453 (2016) (quoting 2 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 4:50,
196–97 (5th ed. 2012).

Predominance does not require the absence of individual questions, only that
common questions predominate over the individual ones. *See Messner,* 669 F.3d at
815. Thus, Rule 23(b)(3) is satisfied even if "other important matters will have to be
tried separately, such as damages or some affirmative defenses peculiar to some
individual class members." *Tyson Foods,* 577 U.S. at 453–54 (quoting WRIGHT &
MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1778 (3d ed. 2005). When weighing
common questions against individual ones, efficiency is critical: "when adjudication
of questions of liability common to the class will achieve economies of time and
expense, the predominance standard is generally satisfied even if damages are not
provable in the aggregate." *Chi. Teachers Union, Local No. 1 v. Bd. Of Educ. Of City
of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015).

Plaintiffs argue that predominance is established through several core, class-
wide questions. (Doc. 91, pp. 17–21). Plaintiffs assert that liability under BIPA turns

on GradImages' standardized conduct, including whether GradImages employed a uniform facial recognition process to analyze graduation photographs, whether that process resulted in GradImages obtaining or possessing biometric identifiers or biometric information, and whether GradImages failed to comply with BIPA's notice, consent, and profit-related requirements. (Doc. 91, pp. 18–20). In essence, the common questions ask whether a statutory violation of BIPA occurred. As Plaintiffs note, courts have found predominance where these same essential common questions were present in BIPA class actions. *See Howe,* 2024 WL 4346631, at *17; *Svoboda,* 2024 WL 1363718, at *9; *TikTok,* 617 F. Supp. 3d at 926, 927; *Rogers,* 2022 WL 854348, at *3. Plaintiffs correctly observe that if they cannot show GradImages obtained or possessed biometrics, all claims fail, making this a quintessential common question. (Doc. 91, p. 20); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) ("a failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class.").

Defendants do not meaningfully dispute that these threshold liability questions are common. Instead, they raise a variety of purported individualized inquiries. (Doc. 94, pp. 27–28). Although Defendants frame these arguments under the commonality requirement of Rule 23(a)(2), they are more appropriately addressed under Rule 23(b)(3). This Court considers each argument below and concludes that none outweighs the common questions that drive this litigation.

###### i.      Public and Private Universities

Defendants first argue that predominance is lacking because the proposed class includes students from both public and private universities, which allegedly requires individualized determinations regarding whether GradImages qualifies for the state-agency contractor exception under Section 25(e) or the financial institution affiliate exception under Section 25(c). (Doc. 94, pp. 24–26). According to GradImages, resolving these issues would require school-by-school inquiries into each university's status and GradImages' contractual relationships with them. (*Id.*)

These arguments do not defeat predominance. The fact that statutory defenses may apply differently to some class members does not preclude certification where common questions otherwise predominate. *See Tyson Foods,* 577 U.S. at 453–54. At most, the circumstances Defendants identify would create a small number of broad subgroups, not the kind of individualized, plaintiff-by-plaintiff variation that has defeated predominance in other cases. *See e.g., Amchem,* 521 U.S. at 624 (predominance lacking where class members were exposed to different asbestos-containing products at different times in different ways). If necessary, any public-private distinction could be addressed through the creation of subclasses or partial liability determinations but does not transform this case into one dominated by individual issues.

This Court is also unpersuaded by Defendants' assertion that differences in university policies, communications, or graduation procedures require individualized adjudication of liability. (Doc. 94, pp. 25–26). The universities are not defendants, and Plaintiffs' claims do not depend on university-specific notice or consent practices.

Rather, the claims arise from GradImages' own alleged collection and use of biometric data through a uniform process. Speculation about potential variation in third-party conduct, unsupported by evidence that such variation will overwhelm common issues, is insufficient to defeat predominance. *See Svoboda*, 2024 WL 1363718, at *11 (quoting *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 850 (N.D. Ill. 2021) ("[A]llowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'").

### ii.    Website Terms of Use and Arbitration

Defendants next contend that individualized inquiries regarding whether class members viewed its website Terms of Use, and thus agreed to arbitration, defeat predominance. (Doc. 94, pp. 27–28). This argument likewise fails. The existence or enforceability of arbitration agreements is a threshold issue that, absent evidence that individualized inquiries would necessarily defeat predominance, does not bear on whether common questions predominate with respect to liability. Even assuming that some class members may be subject to arbitration while others are not, that fact does not overwhelm the common questions concerning whether GradImages violated BIPA through its standardized conduct.

GradImages offers no evidence that a meaningful number of class members actually viewed or assented to the Terms of Use before any alleged BIPA violation occurred. Predominance cannot be defeated by theoretical or speculative individualized issues. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018); *see also Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014)

(holding that an affirmative defense of consent did not defeat predominance absent evidentiary support showing that individualized issues would predominate). By contrast, in *Legg v. PTZ Ins. Agency, Ltd.*, predominance was defeated because the defendants submitted affidavits from numerous class members establishing individualized consent, which would have required extensive, member-by-member testimony at trial. 321 F.R.D. 572, 577 (N.D. Ill. 2017). That is the type of evidentiary showing required to defeat predominance. On the present record, the mere possibility that some class members may have agreed to arbitration does not predominate over the common liability questions central to this case.

### iii.    Damages and Section 15(c)

Defendants' arguments concerning damages fare no better. First, Defendants assert that individualized inquiries are required to establish injury under Section 15(c) (*see* Doc. 94, p. 28), however, that contention improperly conflates merits questions with the predominance analysis. Whether Plaintiffs can ultimately prove their theory of injury is not a question that must be resolved at certification. *See Amgen*, 568 U.S. at 491 ("A plaintiff seeking class certification is not required to prove the elements of his claim at the certification stage, but he must show that the elements of the claim are susceptible to classwide proof.") (Thomas, J., dissenting). Plaintiffs allege (among other things) that GradImages using Gaertner and Koy's biometrics to "facilitate [its] sale of photographs" qualifies as a violation of 15(c). (Doc. 46). Predominance does not require the Court to decide whether Plaintiffs will prevail, only whether their claims can be tried efficiently using common evidence. *See*

*Amgen*, 568 U.S. at 459. The inquiry is whether questions common to the class predominate, *not* whether they will be answered one way or the other. *Id.*

Second, GradImages argues that the potential magnitude of a damages award would violate *Cothron v. White Castle Sys., Inc.* and urges the Court to adopt a discretionary damages framework that would necessarily require individualized damages determinations. (Doc. 94, p. 29 (citing 477 F. Supp. 3d 723 (N.D. Ill. 2020), *aff'd*, 79 F.4th 894 (7th Cir. 2023)). Once again, this argument does not defeat predominance.

The possible size of a statutory damages award does not undermine class certification, nor does it transform damages into an individualized issue that overwhelms common questions. Concerns regarding proportionality, discretion, or equity in awarding statutory damages under BIPA are properly addressed at later stages of the litigation and do not bear on whether class-wide adjudication is appropriate. *See Parker v. Time Warner Ent. Co.,* 331 F.3d 13, 22 (2d Cir. 2003). Courts have repeatedly rejected the contention that the prospect of large statutory damages precludes certification. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.") (citation modified); *Tapia-Rendon*, WL 5228178, at *6 ("[T]he fact that damages under BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner."). Consistent with this authority, courts have certified BIPA classes despite similar objections. *See Svoboda*, 2024 WL 1363718, at *14–15. As the Seventh Circuit has explained, the possibility of

substantial damages reflects legislative policy choices, not a defect in the class action mechanism. *GMAC Mortgage Corp.*, 434 F.3d at 953.

Further, even if the Court later adopts the theory of damages that Defendants propose, the resulting individual inquiries into different class members would still not defeat certification. The Seventh Circuit has made clear that "the need for individual damages determinations at this later stage of the litigation does not itself justify the denial of certification." *Mullins*, 795 F.3d at 671; *see also Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008). Accordingly, predominance is not defeated on this theory.

Third, GradImages' reliance on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), is misplaced. GradImages cites *Comcast* to say that Plaintiffs have not developed a sufficient measure of damages, but *Comcast* requires that damages be tied to a theory of liability, not that damages be calculable on a perfectly uniform, class-wide basis at the certification stage. (Doc. 94, p. 30 (citing 569 U.S. 27 (2013)). As the Supreme Court explained, "under the proper standard for evaluating certification, damages [must be] capable of measurement on a class-wide basis." *Id.* at 34. Here, BIPA expressly provides for *statutory* damages tied to the alleged violations. *See* BIPA § 14/20

In sum, the core questions in this case concern whether GradImages obtained or possessed biometric data through a uniform facial recognition process and whether it failed to comply with BIPA's statutory requirements. Those questions predominate because they are central to every class member's claim and can be resolved through common evidence. The issues Defendants identify do not overwhelm the common

liability questions. Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

### b.    Superiority

Superiority requires that a class action be the most fair and efficient method for adjudicating the controversy. FED. R. CIV. P. 23(b)(3). In making this determination, courts consider: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation already commenced by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)–(D). Courts evaluating BIPA claims have routinely found the superiority requirement satisfied. *See Johns v. Paycor, Inc.*, No. 3:20-CV-264, 2025 WL 947914 (S.D. Ill. Mar. 28, 2025); *Svoboda*, 2024 WL 1363718.

Likewise, the Court concludes that the superiority requirement is satisfied here. The common questions identified in this case are more efficiently resolved in a single class proceeding than through individual actions. Central to Plaintiffs' claims is whether GradImages violated class members' rights under BIPA through its uniform practice of scanning photographs, a question capable of resolution on a class-wide basis. The remaining factors also favor class treatment. There is no indication of other litigation involving these claims or class members, (Doc. 91, Ex. H, pp. 10–11), the Southern District of Illinois is a desirable forum given that Gaertner's graduation ceremony was held at Southern Illinois University, (*Id.*, Ex. A, p. 98:3–12), and the case is manageable under the class action framework. Individual

litigation would be inefficient and impractical, making a class action the superior
method of adjudication.

## IV.     Evidentiary Burden

Lastly, this Court will address Defendants' argument that Plaintiffs have
failed to meet their evidentiary burden under Rule 23. Defendants' assertion that
Plaintiffs failed to submit actual evidence for class certification is not supported by
the record. While it is true that "[o]n issues affecting class certification . . . a court
may not simply assume the truth of the matters as asserted by the plaintiff," the court
is only required to receive evidence when there are "material factual disputes."
*Messner*, 669 F.3d at 811. The Court should not "turn the class certification
proceedings into a dress rehearsal for the trial on the merits." *Id.* Here, the core facts
necessary to satisfy Rule 23 are either supported by evidence or not disputed by
Defendants.

The Court is satisfied that the depositions of Gaertner and Koy, the
interrogatories, and other materials submitted by Plaintiffs are sufficient for meeting
the requirements of Rule 23 as discussed above. The only piece of evidence that
Defendants meaningfully challenge is the veracity of the "Facial Recognition
Explanation" on GradImages' website that Plaintiffs use as partial support for their
core allegation in this lawsuit. Regarding that core allegation, Plaintiffs argue they
submitted evidence showing that: (1) GradImages uses a process it itself labels "facial
recognition"; (2) that process involves submitting photographs to Microsoft; (3)
GradImages used that process on the photographs of Gaertner and Koy; and (4) the
same process was used on the photographs of thousands of others in Illinois. (Doc. 97,

p. 1). Points (2) and (3) are established by GradImages' verified interrogatory responses. (Doc. 91, Ex. C, pp. 9–10; *id.*, Ex. H, pp. 6–7). Point (4) is supported by GradImages' document production (*Id.*, Ex. J, ¶¶ 8, 10).

The only disputed point is (1)—whether the website page describing the facial-recognition process constitutes admissible evidence. (Doc. 94, pp. 12–13; Doc. 97, pp. 2–3). The Court concludes that it does. GradImages never denied writing the page. In response to Plaintiffs' interrogatory asking who authored it, GradImages objected only on the ground that identifying the specific employee would require an extensive company-wide search. (Doc. 59, pp. 18–19). GradImages' statement in their Response in Opposition to Plaintiffs' Motion to Compel Discovery does seem to indicate the Facial Recognition Explanation exists and was in some capacity produced by either an employee of or someone affiliated with GradImages. (Doc. 59, p. 19). Thus, the website's authenticity is adequately established at the class-certification stage. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490–91 (7th Cir. 2018) (party's "own assertions" on website may be judicially noticed).[3]

Defendants' criticisms that Plaintiffs failed to depose additional witnesses or take corporate depositions do not alter the analysis. Plaintiffs bore the burden to produce enough evidence to satisfy Rule 23. *See Beaton*, 907 F.3d at 1025 (citing *Abbott*, 725 F.3d at 810). On this record, the necessary evidence came from Plaintiffs'

---

[3] Defendants also briefly comment that the webpage is hearsay. (Doc. 94, p. 13). Because Plaintiffs have credibly established that website was in some way created by Defendant, it constitutes a statement by a party opponent and is therefore excluded from the definition of hearsay by Rule 801(d)(2)(A). *See Telewisja Polska USA, Inc, v. Echostar Satellite Corp.,* No. 02 C 3293, 2004 WL 2367740, at *5 (N.D. Ill. October 15, 2004) ("Moreover, the contents of Polska's website may be considered an admission of a party-opponent, and are not barred by the hearsay rule.")

own testimony, GradImages' interrogatory admissions, GradImages' document production, and GradImages' own website explanations. Additional depositions were not required.

Taken together, Plaintiffs have submitted sufficient evidence to demonstrate numerosity, commonality, typicality, adequacy, predominance, and superiority. GradImages identifies no genuine evidentiary deficiency that undermines the Rule 23 showing. Accordingly, the Court rejects GradImages' argument that Plaintiffs failed to submit actual evidence and finds the evidentiary record adequate for certification.

### CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification is **GRANTED.**

**IT IS SO ORDERED.**

**DATED: January 30, 2026**

**/s/ *Stephen P. McGlynn***
**STEPHEN P. McGLYNN**
**U.S. District Judge**